# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

BOUNLEUTH S.,[1]

Petitioner,

v.

WARDEN OF THE GOLDEN STATE ANNEX, et al.,

Respondents.

Case No. 1:26-cv-00211-JLT-SKO (HC)
A-Number: 025-144-132

**ORDER DENYING MOTION TO APPOINT COUNSEL**
**[Doc. 3]**

**FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS**

**[TEN DAY DEADLINE]**

Petitioner Bounleuth S. is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  (Doc. 1).  For the reasons detailed below, the Court will recommend the petition be granted.

## BACKGROUND

Petitioner is a citizen of Laos who arrived in the United States as a refugee in 1981. (Doc. 11 at 3.) After several convictions including manufacturing/selling a deadly weapon, shooting at an occupied vehicle, criminal threats, and petty theft, on July 11, 2003, an Immigration Judge ("IJ") ordered his removal to Laos. (Doc. 10-1 at 2.) On February 20, 2004, the order of removal

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only his first name and last initial, to protect sensitive personal information. See Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

became final. (Doc. 10-1 at 2.) On May 21, 2004, Petitioner was released from immigration custody on an Order of Supervision. (Doc. 10-3 at 2.) He complied with the conditions of release and lived in the community. (Doc. 10-3 at 2.)

On December 4, 2025, Immigration and Customs Enforcement ("ICE") detained Petitioner. (Doc. 10-3 at 2.) During his arrest, ICE provided him with a Notice of Revocation of Release. (Doc. 10-2 at 8.) As the sole basis for detention, the Notice stated: "ICE has determined that you can now be expeditiously removed from the United States (U.S.) pursuant to the outstanding order of removal against you. . . . Your case is under current review by the government of Laos for the issuance of a travel document and your removal is now imminent." (Doc. 10-2 at 8.) Petitioner was then provided an Informal Interview pursuant to 8 C.F.R. § 241.13(i) to provide him with an opportunity to respond. (Doc. 10-2 at 7.) Petitioner responded in the interview that he had four children, his wife was two months pregnant, and he did not know how they were going to live. (Doc. 10-2 at 7.)

On January 12, 2026, Petitioner sought his release though a writ of habeas corpus. (Doc. 1.) On February 14, 2026, Respondent filed a response to the petition. (Doc. 10.) On March 12, 2026, Petitioner filed a traverse. (Doc. 11.)

On February 2, 2026, ICE obtained a travel document from Laos that Respondents state will allow it to remove Petitioner from the United States. (Doc. 10-3 at 2.)

Petitioner raises several claims challenging his detention: 1) He claims his continued detention violates his Fifth Amendment due process rights because removal is not significantly likely in the reasonably foreseeable future; 2) He claims his potential removal to a third country violates statute and his constitutional rights; 3) He argues his potential removal to a third country constitutes banishment in violation of the Fifth and Eighth Amendments; and 4) He contends his re-detention is in violation of statute and his Fifth Amendment due process rights.

The Court will start and end its review with Petitioner's fourth claim, since relief on that claim is clearly warranted.

/////

/////

2

**DISCUSSION**

**A. Jurisdiction**

Before turning to the merits, the Court must first assure itself of jurisdiction.  See Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 577, 583 (1999).  Courts have long had jurisdiction to issue writs of habeas corpus to petitioners held in custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C § 2241(c)(3).  In doing so, we carry out the "historic purpose of the writ," namely "to relieve detention by executive authorities without judicial trial."  Zadvydas, 533 U.S. at 699.  But the Supreme Court has consistently "rejected" any suggestion that section 1252(g) covers all claims arising from deportation proceedings or imposes a general jurisdictional limitation.  Dep't of Homeland Sec. v. Regents of the Univ. of Cal., 591 U.S. 1, 19 (2020).  Had Petitioner sought to challenge the Government's decision to execute his removal order, it would indeed bar this Court's review.  But because Petitioner's due process claim contests only his detention resulting from violations of the Government's mandatory duties under certain statutes, regulations, and the Constitution, the Court finds that it has jurisdiction to determine the lawfulness of Petitioner's detention.  See Arce v. United States, 899 F.3d 796, 800 (9th Cir. 2018) ("[W]e have limited [section 1252(g)]'s jurisdiction-stripping power to actions challenging the Attorney General's discretionary decisions to initiate proceedings, adjudicate cases, and execute removal orders.").

**B. Due Process**

Section 241.13 provides "special review procedures" governing ICE's authority to revoke a removable alien's release in cases where, as here, ICE has (1) previously determined "that there is no significant likelihood of removal in the reasonably foreseeable future," and then (2) subsequently seeks to revoke release based on changed circumstances resulting in a "determin[ation] that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."

First, to revoke a removable alien's release under section 241.13(i)(2), ICE must determine that the alien is significantly likely to be removed in the reasonably foreseeable future "on

account of changed circumstances."[2]  § 241.13(i)(2). Here, the Government merely recited the assertion that it believed Petitioner could be expeditiously removed because the government of Laos was reviewing a request for a travel document. The notice is vague and conclusory because it does not provide any information regarding the changed circumstances and how the changed circumstances made Petitioner's removal significantly likely in the reasonably foreseeable future. The notice also fails to reference and/or address any of the relevant factors under 8 C.F.R. § 241.13(f), which include, among other things, an examination of past and ongoing efforts to remove petitioner to a specific country, the "reasonably foreseeable results of those efforts," and the Department of States view "regarding the prospect for removal" of petitioner to the specific country. See 8 C.F.R. § 241.13(f) (listing factors for consideration under 8 C.F.R. § 241.13). As the court in Yan-Ling X. noted:

> Respondents fail to explain why [the country of removal] did not issue a travel document in the past or why [the country of removal] is likely to issue a travel document for petitioner in the reasonably foreseeable future. Respondents do not explain whether the United States and [the country of removal] have a repatriation agreement in place, do not explain whether removals to [the country of removal] are common, do not identify what considerations the Government of [the country of removal] might take into account when deciding whether to issue a travel document, and do not explain whether the Government of [the country of removal] will look favorably upon petitioner's case.

Yan-Ling X. v. Lyons, No. 1:25-cv-1412 KES CDB, ___ F. Supp. ____, 2025 WL 3123793, at *4 (E.D. Cal. Nov. 7, 2025).

In addition, the Government has not submitted any evidence that it made any determination regarding a change in circumstances prior to Petitioner's detention. Section 241.13(i)(2) "requires that this determination is made *before* the removable alien has had his release revoked." Tran v. Noem, No. 25-cv-2391-BTM-BLM, 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025) (emphasis added); see also Sphabmixay v. Noem, No. 25CV2648-LL-VET, 2025 WL 3034071, at *2 (S.D. Cal. Oct. 30, 2025); Phakeokoth, v. Noem, No. 3:25-CV-02817-RBM-SBC, 2025 WL 3124341, at *5 (S.D. Cal. Nov. 7, 2025).

---

[2] The Court notes that section 241.13(i)(1) provides another avenue for the Government to revoke release under section 241.13 in instances where an alien "violates the conditions of release." Although Respondent now claims Petitioner violated his order of supervision in December 2025, the alleged violation was not used as a basis for re-detention, as per the Notice of Revocation.

Here, Petitioner was given a notice upon his arrest and detention. There is nothing in the record to indicate that any changed circumstances determination was made before his release was revoked. With "no evidence of an actual determination of changed circumstances that justified the initial revocation of [Petitioner's] release," the Court finds the Government has violated section 241.13(i)(2).  See, e.g., Sphabmixay, 2025 WL 3034071, at *2 (finding the same); Hoac v. Becerra, No. 2:25-cv-1740 DC JDP, 2025 WL 1993771 (E.D. Cal. July 16, 2025) (same).

Second, even if the Government had made a determination based on legally sufficient "changed circumstances," the Court finds the Government also violated section 241.13(i)(3)'s notice requirement.  Section 241.13(i)(3) sets forth "revocation procedures" governing revocation carried out pursuant to this section.  Section 241.13(i)(3) states that "[u]pon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). Accordingly, revocation of release pursuant to 8 C.F.R. § 241.13(i), requires the following three procedures: (1) a notice of the "reasons for revocation," (2) a "prompt" initial informal interview after re-detention, and (3) an opportunity to respond to the reasons stated for revocation.

Here, despite being provided a prompt initial informal interview with a purported opportunity to respond to the reasons stated for revocation, no concrete "reasons for revocation" were provided. The Government offered only a conclusory statement that Laos was reviewing an application for travel documents.  The Government did not identify any changed circumstances and explain how those changed circumstances made Petitioner's removal significantly likely. A notice that provides nothing more than conclusory statements reciting back to the regulation's requirements is not adequate notice of the reasons for Petitioner's revocation. Sarail A. v. Bondi, 803 F. Supp. 3d 775, 780 (D. Minn. 2025) (notice merely citing changed circumstances without any explanation is insufficient under § 241.13(i)(3)); Roble v. Bondi, 803 F. Supp. 3d 766, 772 (D. Minn. 2025) ("[p]roviding a notice that simply recites the language of the regulation does not

satisfy the Government's obligation to provide the "reasons" why [a noncitizen's] Order of Supervision was revoked"). "[F]ailure to notify petitioner of the reasons for revocation beyond 'changed circumstances' ... violates 8 C.F.R. § 241.13(i)(3)." Saqib v. Andrews, No. 1:25-cv-2035 DC CSK, 2026 WL 350830, at *5 (E.D. Cal. Feb. 9, 2026); see also Sarail A., 803 F. Supp. 3d at 780 (finding violation of § 241.13(i)(3) based on inadequate notice). As no real reasons for revocation were provided, Petitioner was denied his opportunity to respond. Thus, the Government failed to provide Petitioner with proper notice in violation of § 241.13(i)(3).

Courts "have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered." Truong v. Noem, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (collecting cases). Even though the Government states it obtained a travel document to Laos on February 2, 2026, Petitioner should be entitled to release. Id. at *1–6 (granting habeas and releasing the petitioner with a deportation order back on supervision when the respondents failed to comply with § 241.13(i) and § 241.4(l) despite later securing travel documents for his country of origin); Tran, 2025 WL 3005347, at *1–4 (same); Sphabmixay, 2025 WL 3034071, at *3; Phakeokoth, 2025 WL 3124341, at *5.  This Court should follow suit.

Because the Government was required to, but failed to comply with  section 241.13(i) when it revoked Petitioner's supervised release on December 4, 2025, issuing a writ to reinstate that release is warranted to preserve the status quo before the Government's unlawful actions. The status quo *ante litem* is "the last uncontested status which preceded the pending controversy[.]" GoTo.com, Inc. v. Walt Disney, Co., 202 F.3d 1199, 1210 (9th Cir, 2000) (quoting Tanner Motor Livery, Ltd. v. Avis, Inc., 316 F.2d 804, 809 (9th Cir. 1963)); see Ariz. Dream Act Coalition v. Brewer, 757 F.3d 1053, 1061 (9th Cir. 2014) ("the 'status quo' refers to the legally relevant relationship between the parties before the controversy arose") (citing McCormack v. Hiedeman, 694 F.3d 1004, 1020 (9th Cir. 2012)).

Here, Petitioner had been on supervised release for over twenty years until he was re-detained by the Government. Because Petitioner challenges his re-detainment, the last uncontested status of Petitioner was before he was re-detained on December 4, 2025. See Doe,

2025 WL 691664, at *2 ("It is questionable whether that status quo is properly considered to be detention when the Government suddenly took an allegedly unconstitutional action in rearresting Petitioner without a hearing."); Domingo-Ros v. Archambeault, No. 25-cv-01208-DMS-DEB, 2025 WL 1425558  (S.D. Cal. May 18, 2025) (granting an injunction for petitioners that sought a "probationary injunction" to "preserve the status quo preceding this litigation—their physical presence in the United States free from detention"); Pinchi v. Noem, No. 25-cv-05632-RMI-RFL, 2025 WL 1853763, at *3 (N.D. Cal. Jul. 4, 2025) (finding that the "moment prior to the Petitioner's likely illegal detention" is the status quo). Accordingly, the Court finds Petitioner's immediate release is required to return him to the status quo.

## MOTION FOR COUNSEL

On January 12, 2026, Petitioner requested appointment of counsel. (Doc. 3.) Title 18 U.S.C. § 3006A(a)(2)(B) authorizes the appointment of counsel at any stage of the case if "the interests of justice so require."  See Rule 8(c), Rules Governing Section 2254 Cases.  Here, the Court does not find that the interests of justice require the appointment of counsel at the present time.

## ORDER

IT IS HEREBY ORDERED that Petitioner's motion for counsel is DENIED without prejudice.

## RECOMMENDATION

Accordingly, IT IS HEREBY RECOMMENDED that the Petition for Writ of Habeas Corpus be granted and Respondents be ordered to release Petitioner.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within ten (10) days after being served with a copy of this Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. Id. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good

cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014).  This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

IT IS SO ORDERED.

Dated:   **March 17, 2026**                         /s/ *Sheila K. Oberto*
                                      UNITED STATES MAGISTRATE JUDGE